| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **Docket No.:**    **0418 1:15CR00223-1** |
| **Benjamin Cornelius Blue** | ) | |
| | ) | |

**Prepared for:**     The Honorable James A. Beaty, Jr.
                      Senior United States District Judge

**Prepared by:**      Karyn S. Franks
                      U.S. Probation Officer
                      Greensboro, NC
                      336-291-1353
                      karyn_franks@ncmp.uscourts.gov

**Assistant U.S. Attorney**                **Defense Counsel**
Kyle D. Pousson                             Daniel A. Harris
101 S. Edgeworth Street, 4th Floor          415 W. Friendly Avenue
Greensboro, NC 27402                   Greensboro, NC 27401
336-333-5351                                336-378-1212
kyle.pousson@usdoj.gov               daniel@cliffordlawoffice.com

**Sentence Date:**      May 17, 2016 9:30 AM

**Offense:**             **Count 1**:
                      Armed Bank Robbery
                      18 U.S.C. §§ 2113(d) and 2
                      Not more than 25 years imprisonment/$250,000 fine, or both,
                      Class B Felony
                      **Count 2**:
                      Carry and Use, by Brandishing, a Firearm During and in Relation
                      to a Crime of Violence
                      18 U.S.C. §§ 924(c)(1)(A)(ii) and 2
                      7 years to life imprisonment, consecutive to any other count/$250,000
                      fine, or both,
                      Class A Felony

**Release Status:**     Detained in state or federal custody for charges related to the instant
                      offense conduct since May 9, 2015.

**Detainers:**          None.

**Date Report Prepared:** December 7, 2015        **Date Report Revised:** May 10, 2016

**Codefendants:**          Austin Randy Owens  - 0418 1:15CR00223-2

**Related Cases:**          None.

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | March 21, 1985 |
| **Age:** | 31 |
| **Race:** | Black or African American |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Male |
| | |
| **SSN#:** | 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 |
| **FBI#:** | 442140WB7 |
| **USM#:** | 26350-057 |
| **State ID#:** | NC0975922A |
| **PACTS#:** | 16254 |
| | |
| **Education:** | No HS Diploma or GED |
| **Dependents:** | 1 |
| **Citizenship:** | U.S. Citizen |
| **Country of Birth:** | United States |
| **Place of Birth:** | High Point, NC |

**Legal Address:** 6351 Chipper Trail
Thomasville, North Carolina 27360

**Residence Address:** 6351 Chipper Trail
Thomasville, North Carolina 27360

**Alias(es):** Also Known As: Blue, Ben
Also Known As: Blue, Benjamin Cornelious

**Alternate IDs:** DMV ID: NC37507928
DOC #: NC0820430

***Restrictions on Use and Redisclosure of Presentence Investigation Report.*** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.    On June 29, 2015, a federal grand jury for the Middle District of North Carolina returned a two-count indictment charges **Benjamin Cornelius Blue** and Austin Randy Owens. Count One charges that on or about May 9, 2015, in Guilford County, NC, **Benjamin Cornelius Blue** and Austin Randy Owens robbed Bank of America, 5013 Mackay Road, Jamestown, NC, of $5,002 by the use of dangerous weapon, that is, a handgun, in violation of 18 U.S.C. §§ 2113(a) and (d), and 2.    Count Two charges that on or about May 9, 2015, **Benjamin Cornelius Blue** and Austin Randy Owens carried and used, by brandishing, a firearm (handgun) during and in relation to a crime of violence, as listed in Count One of the indictment, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.

2.    On September 10, 2015, **Benjamin Cornelius Blue** pled guilty to Counts One and Two of the indictment, pursuant to a written Plea Agreement which includes the following provisions: The defendant agrees to pay restitution, as determined by the Court, to any victims harmed by defendant's "relevant conduct," as defined in USSG §1B1.3, pursuant to 18 U.S.C. § 3663A(a)(3).    If the Court determines at the time of sentencing that the defendant qualifies for a two-level decrease in the offense level for acceptance of responsibility pursuant to USSG §3E1.1(a), and that the offense level prior to the operation of that guideline is 16 or greater, then the United States will recommend an additional one-level decrease, pursuant to USSG §3E1.1(b).    This portion of the Plea Agreement is made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. The defendant agrees that the firearm charged in Count Two of the indictment was brandished during and in relation to the offense of bank robbery as charged in Count One of the indictment.    The defendant agrees to abandon any interest that he has in the firearm set out in the indictment.    The defendant agrees that pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. The defendant agrees that if the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce judgment.    If the defendant is indigent and cannot pay the $100 special assessment for each offense of conviction at the time of sentencing, the defendant agrees to participate in the Inmate Financial Responsibility Program for purposes of paying such assessment.

### Codefendant

3.    Austin Randy Owens (1:15CR223-2) pled guilty to Count One of the indictment on August 7, 2015.    He was sentenced to 63 months imprisonment, to be followed by four years of supervised release, on January 12, 2016, by the Honorable William L. Osteen, Jr.

### The Offense Conduct

4.    On May 9, 2015, at approximately 12:59 p.m., officers with the Greensboro, NC, police department responded to a robbery alarm at the Bank of America located at 5013 Mackay

Road, Jamestown, NC. The teller reported the bank had been robbed by an individual who wore a black hooded coat, mask, and gloves. She reported that the individual was armed with a handgun. While brandishing the firearm, the individual yelled at the teller and ordered her to give him all of her money. After she handed him $5,002 in U.S. currency, which contained two GPS tracking devices, the individual fled the bank. Several customers were in the bank at the time of the robbery.

5.    A customer, M.A., reported to law enforcement that as he was exiting the bank, an individual wearing a black ski mask was walking into the bank. The masked individual pulled the slide back on his gun and ordered M.A. back into the bank. M.A. did as he was told; however, he immediately exited the bank after the masked man passed him to approach the tellers. M.A. described the masked man as being approximately 5'2" to 5'3" in height.

6.    Responding officers were directed to the location of the tracking devices by the bank's security company. The tracking signal led officers to a Nissan Armada travelling towards High Point, NC. Officers conducted a traffic stop near the intersection of Cedrow Road and North Pendleton Street in High Point. The Nissan was being driven by Austin Randy Owens. The sole passenger, **Benjamin Cornelius Blue**, was ducked down in the back seat. Officers recovered a backpack containing $4,928 of the bank's money, a GPS tracking device, and a loaded Hi-Point .45 caliber handgun (serial number 4274549) inside the Nissan. Officers also located the black hooded coat, mask, and gloves worn by the robber. Finally, officers also recovered a driver's license belonging to a customer, A.G.H., at the bank, which was taken during the robbery.

7.    **Benjamin Blue** and Austin Owens were arrested and informed of their *Miranda* rights. Both chose to give statements. During **Benjamin Blue's** interview, officers received information from the bank's security company that the second tracking device was transmitting from inside the police department. This tracking device was found attached to a bundle of cash hidden on the bottom of **Benjamin Blue's** chair in the interview room. (The exact amount of cash contained in this bundle has not been provided by the government.) Both **Benjamin Blue** and Austin Owens eventually admitted to the interviewing officers their involvement in the robbery. **Benjamin Blue** admitted to being the robber, and Austin Owens admitted to providing the firearm and driving the getaway car.

8.    On May 9, 2015, **Benjamin Cornelius Blue** was arrested and charged with Felony Robbery with a Dangerous Weapon and Felony Conspiracy to Commit Robbery with a Dangerous Weapon (15CRS75050). On June 9, 2015, **Benjamin Cornelius Blue** was charged with Felony Possession of Firearm by Felon (15CRS75144), based upon the instant offense conduct. All of these charges were dismissed in Guilford County Superior Court, Greensboro, NC, on August 14, 2015.

9.    On May 9, 2015, Austin Randy Owens was arrested and charged with Felony Robbery with a Dangerous Weapon and Felony Conspiracy to Commit Robbery with a Dangerous Weapon (15CRS75051). On May 12, 2015, Austin Randy Owens was charged with

Felony Possession of Firearm by Felon (15CRS75143). All of these charges were dismissed in Guilford County Superior Court, Greensboro, NC, on August 14, 2015.

### Victim Impact

10.     The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. Bank of America, 501 Mackay Road, Jamestown, NC, suffered a loss of $5,002 as a result of the offense. Currency in the amount of $5,098 was recovered at the time of the defendant's arrest on May 9, 2015. Once these funds are released to the bank, the bank will not have an outstanding loss. There is no indication that any of the customers in the bank suffered physical injury or losses. *(Note: The amount of funds held in evidence exceeds the amount owed to the bank.)*

11.     Declaration of Victim Loss forms were sent to the bank and the victim tellers; however, responses have not been received.

### Adjustment for Obstruction of Justice

12.     The probation officer has no information indicating the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

13.     The defendant submitted a written statement of acceptance of responsibility wherein he stated that he takes "full responsibility for what happened during the instant offense." He specifically stated the following, "I let my addiction control my judgment and made a terrible decision. I had a good life going, a good job, a great wife and children who depended on me. Now, I have thrown all that away. For the rest of my life I will have to live with the consequences of my actions, including the disappointment I have caused my wife and children. I have been incarcerated since I was arrested on May 9 and have already had a lot of time to think about the terrible decision I made and how much I have hurt those who love me the most and myself. I understand that I am facing a lengthy prison sentence. I will continue to fight my demons, and stay on the straight and narrow path with the help of drug counseling and with the support of my family. The only thing I have to say in my defense is I had no intention of hurting anyone that day and would not have done so. While I am sure they were in great fear, no one at the bank was ever in danger, despite my terribly stupid actions [sic]."

### Offense Level Computation

14.     The 2015 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

15.     Counts One and Two are closely related, but Count Two, which charges Carry and Use, By Brandishing, a Firearm During and in Relation to a Crime of Violence, carries a mandatory consecutive term of imprisonment and is exempt from the application of the multiple count rules. USSG §3D1.1(b). Any specific offense characteristic for the

possession, use, or discharge of a firearm is not applied in respect to the guideline for the underlying offense in Count One.  USSG §2K2.4, comment.(n.4).

**Count 1**: **Armed Bank Robbery**

16.  **Base Offense Level:** The guideline for 18 U.S.C. § 2113(a) offenses is found in USSG §2B3.1 of the guidelines. That section provides  a base offense level of 20. USSG §2B3.1(a).                                                                                     **20**

17.  **Specific Offense Characteristics:** Because the property of a financial institution was taken, the offense level is increased by two levels. USSG §2B3.1(b)(1).           **+2**

18.  **Victim Related Adjustment:** None.                                                                **0**

19.  **Adjustment for Role in the Offense:** None.                                                    **0**

20.  **Adjustment for Obstruction of Justice:** None.                                               **0**

21.  **Adjusted Offense Level (Subtotal):**                                                              **22**

22.  **Chapter Four Enhancement:** The defendant was at least 18 years old at the time of the instant offense of conviction; Count One is a felony that is either a crime of violence or a controlled substance offense; and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense [1] Felony Robbery with a Dangerous Weapon (4 counts) (02CRS105070, 02CRS105080, 02CRS105081, and 02CRS105084), as shown in paragraph 28; and, 2) Felony Bank Robbery (1:10CR107-1), as shown in paragraph 36]; therefore, the defendant is a career offender. The offense level for a career offender is 34. USSG §4B1.1(b)(2).                                                     **34**

23.  **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).                                                      **-2**

24.  **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b).                 **-1**

25.  **Total Offense Level:**                                                                               **31**

**Offense Behavior Not Part of Relevant Conduct:**

26.  None.

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

27.    None known.

### Adult Criminal Conviction(s)

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 28. | 12/02/2002 (Age 17) | Felony Robbery with a Dangerous Weapon (4 counts) Docket Nos. 02CRS105070, 02CRS105080, 02CRS105081, and 02CRS105084 Guilford County Superior Court High Point, NC | 10/30/2003: Consolidated for judgment. 40-57 months imprisonment. 03/30/2006: Released to post-release supervision. 12/25/2006: Post-release supervision expired. | 4A1.1(a) 4A1.2(d)(1) | 3 |

The judgment shows the defendant pled guilty and was represented by Attorney Mittie Smith. On July 26, 2002, the defendant stole $198.09 belonging to Iloco Mart, from the presence and person of Phillip Carl Stadler, by means of an assault consisting of having in his possession, and threatening use of, a rifle. On August 13, 2002, Defendant Blue stole $65 belonging to Circle K Stores, Inc., from the presence and person of Jay Dunbar, by means of an assault consisting of having in his possession, and threatening the use of, a rifle/shotgun-type firearm. On September 17, 2002, the defendant stole a purse (valued at $20) from the presence and person of Jennifer Lynn Coffer, by means of an assault consisting of having in his possession, and threatening the use of, a rifle. On September 18, 2002, Defendant Blue stole $200 from The Pop Shoppe, from the presence and person of John Russell Briles, by means of an assault consisting of having in his possession, and threatening the use of, a rifle. (According to the defendant, his older brother, Frederick Blue, was also charged in these robberies. A North Carolina-wide criminal record check reflects that Frederick Blue was convicted of four counts of Felony Robbery with a Dangerous Weapon (02CRS105074, 02CRS105078, 02CRS105082, and 02CRS105083) on September 22, 2003, in Guilford County Superior Court, High Point, NC. The computerized record reflects that the robberies for which Frederick Blue was convicted of occurred on the same dates as the robberies which the defendant was convicted of as noted above.)

*(Note: The convictions for Felony Robbery with a Dangerous Weapon are Class D Felonies, and the defendant's Prior Record Level was I, resulting in a presumptive imprisonment range with a maximum penalty of 86 months, as per the North Carolina Structured Sentencing Act.)*

| | | | | | |
|---|---|---|---|---|---|
| 29. | 07/06/2006 (Age 21) | 1) Misd. No Operator's License Docket No. 06CR 4284 2) Misd. Reckless Driving-Wanton Disregard Docket No. 06CR 4285 Guilford County District Court High Point, NC | 04/25/2007: Consolidated for judgment. Pay fine and court costs. | 4A1.2(c)(1) | 0 |

Computerized records show the defendant waived attorney representation and pled guilty. Due to the age of the offenses, which occurred on July 6, 2006, additional information is unavailable. Accompanying charges of Give/Lend/Borrow License Plate (06CR 4284) and Fail to Wear Seat Belt-Driver (06CR 4285) were dismissed.

| | | | | | |
|---|---|---|---|---|---|
| 30. | 01/28/2007 (Age 22) | Misd. Fictitious/Cancelled/ Revoked Registration Card/Tag Docket No. 07CR 701023 Guilford County District Court High Point, NC | 07/18/2007: Pay fine. | 4A1.2(c)(1) | 0 |

Computerized records reflect that the defendant waived attorney representation and pled guilty as charged. Due to the age of the offense, which occurred on January 28, 2007, additional information is unavailable. An accompanying charge of Misdemeanor Learner's Permit Violation was dismissed.

| | | | | | |
|---|---|---|---|---|---|
| 31. | 12/22/2007 (Age 22) | Misd. Driving While License Revoked Docket No. 07CR 708714 Durham County District Court Durham, NC | 04/04/2008: Prayer for judgment continued upon payment of court costs. | 4A1.2(c)(1) | 0 |

Computerized records reflect that the defendant waived attorney representation and pled guilty as charged. Due to the age of the offense, which occurred on December 22, 2007, additional information is unavailable. An accompanying charge of Speeding was dismissed.

| 32. | 02/11/2009 (Age 23) | Misd. Driving While License Revoked Docket No. 09CR 1092 Randolph County District Court Asheboro, NC | 07/24/2009: 45 days imprisonment, suspended; 12 months supervised probation. 7/21/2010: Probation revoked. 45 days imprisonment. | 4A1.1(c) 4A1.2(c)(1)(A) 4A1.2(k)(1) | 1 |

The judgment shows the defendant waived attorney representation and pled guilty as charged. This offense occurred on February 11, 2009. An accompanying charge of Expired Registration Card/Tag (09CR 1092) and additional charges of Expired/No Inspection and Fictitious/Altered Title/Registration Card/Tag (09CR 1093) were dismissed.

A probation violation report was filed in Guilford County District Court, High Point, NC (10CR 1441). Computerized records reflect the defendant was represented by Graham Holt at the final revocation hearing. Additional information regarding the probation violation is unknown.

| 33. | 02/13/2009 (Age 23) | Misd. Possession of Drug Paraphernalia Docket No. 09CR 69934 Guilford County District Court High Point, NC | 04/21/2009: Pay fine and court costs. 07/10/2009: Show Cause Order issued. 07/21/2010: 30 days imprisonment. | 4A1.1(c) | 1 |

The judgment shows the defendant pled guilty and computerized records show the defendant was represented by Attorney Graham E. Holt. On February 13, 2009, Defendant Blue possessed a digital scale and a box of plastic baggies. Additional charges of Misdemeanor Driving While License Revoked, Give/Lend/Borrow License Plate (09CR 69933), and an accompanying charge of Expired/No Inspection (09CR 69934) were dismissed.

| 34. | 06/24/2009 (Age 24) | 1) Misd. Solicit to Obtain Property by False Pretense 2) Misd. Possession of Stolen Goods/Property Docket No. 09CR 83832 Guilford County District Court High Point, NC | 07/21/2010: 1) 20 days imprisonment. 2) 20 days imprisonment. | 4A1.1(c) 4A1.2(a)(2)(A) | 1 |

Computerized records show the defendant was represented by Attorney Graham Holt. He was originally charged in 1) with Felony Conspire to Obtain Property by False Pretense; however, he pled guilty to the lesser included offense and as charged in 2). On June 1, 2009, the defendant conspired with Christina Burgess to commit the felony of obtaining U.S. currency from 1st

National Pawn (DBA: Pawn Way #7), by means of selling a stolen JVC car stereo which belonged to Richard Melton.

| 35. | 08/21/2009 (Age 24) | Misd. Hit/Run Fail to Stop for Property Damage Docket No. 09CR 44151 Guilford County District Court Greensboro, NC | 04/20/2010: 30 days imprisonment. | 4A1.1(c) 4A1.2(c)(1)(A) | 1 |
|---|---|---|---|---|---|

Computerized records show the defendant was represented by Attorney Tonia Cutchin and pled guilty as charged. The offense occurred on August 21, 2009, during the defendant's commission of a bank robbery (1:10CR107-1). An accompanying charge of Misdemeanor Driving While License Revoked was dismissed.

| 36. | 05/12/2010 (Age 25) | Felony Bank Robbery Docket No. 1:10CR107-1 United States District Court Middle District of North Carolina Greensboro, NC | 12/21/2010: 52 months imprisonment, followed by 3 years of supervised release. 08/30/2013: Released from custody. Term of supervised release commenced. *Pending supervised release violation.* | 4A1.1(a) | 3 |
|---|---|---|---|---|---|

The defendant was named in a single-count indictment filed in the Middle District of North Carolina on March 30, 2010. On or about August 21, 2009, Defendant Blue robbed the SunTrust bank located at 2820 Old Hollow Road, Walkertown, NC, of $7,385. During the commission of the robbery he threatened the teller with a toy water gun that he had painted black. The defendant was represented by Assistant Federal Public Defender Gregory Davis and pled guilty to the indictment on July 7, 2010. Related state charges of Felony Robbery with a Dangerous Weapon, Felony Flee/Elude Arrest with Motor Vehicle (09CR 59189), and Felony Larceny of Motor Vehicle (09CR 90200) were dismissed in Forsyth County District Court, Winston-Salem, NC, between September 8, 2009, and April 14, 2010.

A Petition for Warrant or Summons for Offender Under Supervision was filed on June 15, 2015, and a warrant was issued on this date based upon violations related to the instant offense conduct. The warrant was served on the defendant on August 31, 2015, while the defendant was in custody awaiting disposition of the instant offense. The revocation hearing in this matter is pending.

| 37. | A criminal records check also revealed a conviction for Improper Equipment in Guilford County, NC. This offense occurred in 2014. This citation resulted in the payment of a fine and court costs. No criminal history points were assessed. USSG §4A1.2(c)(2). |
|---|---|

### Criminal History Computation

38.    The criminal convictions above result in a subtotal criminal history score of ten.

39.    The defendant committed the instant offense while under a criminal justice sentence, that is, the defendant was on supervised release in the Middle District of North Carolina for Felony Bank Robbery (1:10CR107-1); therefore, two points are added. USSG §4A1.1(d).

40.    The total criminal history score is 12. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 12 establishes a criminal history category of V.

41.    The defendant is a career offender; therefore, the criminal history category is VI. USSG §4B1.1(b).

### Other Criminal Conduct

42.    None known.

### Pending Charges

43.    As referenced in paragraph 36, the defendant has a pending supervised release violation in case number 1:10CR107-1. A Petition for Warrant or Summons for Offender Under Supervision was filed on June 15, 2015, and a warrant was issued on the same date based upon violations related to the instant offense conduct. The warrant was served on the defendant on August 31, 2015, while the defendant was in custody awaiting disposition of the instant offense. The revocation hearing in this matter is pending before the Court.

### Other Arrests

| Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|
| 44. 05/15/2002 (Age 17) | Misd. Simple Assault Docket No. 02CR 84381 | Guilford County District Court High Point, NC | 10/22/2002: Voluntarily dismissed. |

The alleged offense occurred on May 9, 2002, and the alleged victim was Deric D. Stubbs.

| | | | |
|---|---|---|---|
| 45. 06/04/2002 (Age 17) | Misd. Assault by Pointing a Gun Docket No. 02CR 86894 | Guilford County District Court High Point, NC | 05/15/2003: Voluntarily dismissed. |

The alleged offense occurred on June 3, 2002, and the alleged victim was William Blue.

46.     Charges of Misdemeanor First Degree Trespass Enter/Remain, Misdemeanor Tampering with Vehicle, Misdemeanor Driving While License Revoked (four counts), Failure to Stop at a Stop Sign/Flashing Red Light, Misdemeanor Fictitious/Altered Title/ Registration Card/Tag, Exceeding Safe Speed, and Expired Registration Card/Tag were dismissed in Catawba, Guilford, and Randolph Counties, NC, between 2001 and 2015.


## PART C. OFFENDER CHARACTERISTICS

### Personal and Family Data

47.     Benjamin Cornelius Blue was born on March 21, 1985, in High Point, NC, to the marital union of William Blue and Ozella (nee: Chandler) Blue, as verified by birth records provided by the Guilford County Register of Deeds, Greensboro, NC. The defendant's father was employed as a mechanic before he suffered a stroke in 1995. The defendant advised that his father died in 2008. The defendant's mother, age 61, resides in High Point, NC, and is employed as a Certified Nursing Assistant (CNA).

48.     Defendant Blue has 11 siblings, eight of which are brothers. William Blue, Jr., age 39, resides in High Point, NC, and is employed by a local manufacturing company. Elias Blue, age 35, resides in Winston-Salem, NC, and is currently unemployed. Elias Blue has a criminal record which includes a conviction for Felony Robbery with a Dangerous Weapon in 1998 in Guilford County, NC. Jonathon Blue, age 34, resides in High Point, NC, and is employed by a local factory. Jonathon Blue was convicted in the Western District of North Carolina of Bank Robbery, and was sentenced on January 6, 2009, to 87 months imprisonment, to be followed by three years of supervised release. He was released from imprisonment on June 13, 2014, and he is currently on supervised release in the Middle District of North Carolina. Joseph Blue, age 33, resides in High Point, NC, and is employed as a mechanic. He has a criminal record which includes a conviction for Felony Robbery with a Dangerous Weapon in 2006 in Guilford County, NC. Frederick Blue, age 32, resides in High Point, NC, and is employed as a truck driver. Frederick Blue has a criminal record which includes a conviction for Felony Robbery with a Dangerous Weapon in 2003 in Guilford County, NC. Willis Blue, age 27, lives in High Point, NC, and is employed by a local factory. Willis Blue has a criminal record which includes a conviction for Felony Conspiracy to Commit Robbery with a Dangerous Weapon in 2011 in Guilford County, NC. Marcus Blue, age 26, lives in High Point, NC, and is employed by a local furniture company. Marcus Blue has a criminal record which includes a conviction for Felony Conspiracy to Commit Robbery with a Dangerous Weapon in 2011 in Guilford County, NC. Devon Blue, age 21, lives in Greensboro, NC, and is employed at a nursing home.

49.     The defendant has three sisters. Tanya Blue, age 40, lives in High Point, NC, and is employed as a CNA. Misty (nee: Blue) Gripper, age 37, resides in Greensboro, NC, and is a professor at North Carolina Agricultural and Technical State University, Greensboro, NC. Tasha Blue, age 28, lives in High Point, NC, and is currently a stay-at-home mother. Defendant Blue indicated that he has a good relationship with all of his immediate family

members.  He recalled that his father had a drinking problem and was often abusive towards his mother and their children.  He stated that all of his brothers, except William, Elias, and Devon, have substance abuse issues.  No one in his family has a history of mental illness.

50.    Defendant Blue married Reannon Wilkes, age 32, in Guilford County, NC, on October 24, 2014, as verified by the Guilford County Register of Deeds.  Reannon Blue works from home as a transportation broker.  She has a criminal history which includes convictions in Guilford County, NC, for Felony Maintaining a Vehicle/Dwelling/Place for Controlled Substance (2004), Felony Possession of Cocaine (2005), and Felony Maintaining a Vehicle/Dwelling/Place for Controlled Substance (2005).  The couple has one child together.  William King Blue was born June 20, 2014.  Reannon Blue has two other children from previous relationships.  Anthony Bittle, age six, and Lillyanna Wilkes, age four, reside with their mother.  Reannon Blue was contacted telephonically and verified the defendant's personal history as he reported it during the presentence interview.  She described the defendant as a good husband and a good father.  She advised that he was never abusive towards her or their children, and he always provided financially for the family.

51.    The defendant stated that he has resided in or near High Point, NC, his entire life.  At the time of the instant offense, he and his wife and children were residing in Archdale, NC; however, since his arrest on related state charges in May 2015, his wife and children have moved to 6351 Chipper Trail, Thomasville, NC.  The defendant's wife expressed her continued support for the defendant and indicated that this would be his residence upon his release from the Bureau of Prisons.  Due to the lengthy term of imprisonment the defendant is facing, a home investigation was not completed.

## Physical Condition

52.    Defendant Blue is 5'4" in height and weighs 135 pounds.  He has black hair and brown eyes.  He described himself as healthy and advised that he is not currently under the care of a physician, nor is he taking any medication.  The defendant stated that he has no history of hospitalizations.  This information was corroborated by the defendant's wife.

53.    The defendant advised that he has a scar on the right side of his back as the result of a childhood injury.  Defendant Blue reported the following tattoos:  checkered flags with the initials W.B. on his neck; a scroll with the words "If you don't want people to pull you down, always position yourself out of reach" on his upper left arm; skulls on his lower left arm; flames with the name "Blue" on his upper right arm; and, the name "Chrissy" on his lower right arm.

## Mental and Emotional Health

54.    During the presentence interview, the defendant was fully oriented as to time, person, and place.  Although no I.Q. scores are available, Defendant Blue appeared to function within a normal range of intelligence.  The defendant denied any history of mental health

treatment or emotional problems.  This information was corroborated by the defendant's wife.

### Substance Abuse

55.     Defendant Blue reported prior use of alcohol, marijuana, and opiates.  He recalled that he first consumed alcohol while he was in the eighth grade.  He described his consumption of alcohol as "every day," and he stated that he last consumed it the day before the instant offense.  He described himself as an alcoholic, noting that he drank at least a six-pack every day, and on days that he did not have to work, he drank 12 to 15 beers.  The defendant recalled first smoking marijuana when he was a freshman in high school.  He last smoked it in May 2015.  Defendant Blue advised that he began using opiates at the age of 22.  He stated that he bought Percocet "on the street" and used it once or twice a week.  He recalled that he last used opiates the day before the instant offense.

56.     The defendant reported that he has no history of substance abuse treatment.  He expressed a strong desire to attend treatment in the Bureau of Prisons, as he noted that "(his) substance abuse played a part in (his) decision to rob the bank, because (he) needed money for drugs."  The defendant's wife advised that she was aware of the defendant's consumption of alcohol; however, she stated that she did not know that he was using drugs.  She reported that "he hid his drug use" from her.

### Educational, Vocational and Special Skills

57.     Defendant Blue indicated that he completed the tenth grade at T.W. Andrews High School, in High Point, NC.  Scholastic records were requested from T.W. Andrews High School; however, a response was not received.  The defendant expressed a desire to obtain his GED while he is incarcerated in the Bureau of Prisons.

### Employment Record

58.     Defendant Blue has been in custody since May 9, 2015.  He reported the following employment history:

| Start Date | End Date | Employer | Gross/Other Monthly Income | Hours/ Week |
|---|---|---|---|---|
| 59.     07/28/2014 | 05/09/2015 | Asplundh Tree Service Greensboro, NC | $1,837.33 | 40.00 |

Defendant Blue reported that he was employed by this company clearing electrical lines for Duke Energy.  He reported that at the time of the instant offense, he was earning $10.61 per hour.  Employment records were requested from Asplundh Tree Service; however, a response was not received.  The defendant's wife corroborated this employment.

| 60. | 11/18/2013 | 07/28/2014 | Carolina Frames Asheboro, NC | $1,560.00 | 40.00 |
|---|---|---|---|---|---|

Defendant Blue reported that he was employed by this company building frames for furniture. He recalled earning $9.00 per hour, before he left this position for a better job with Asplundh. Employment records were requested from Carolina Frames; however, a response was not received. The defendant's wife corroborated this employment.

| 61. | 05/16/2013 | 11/19/2013 | Interior Wood Specialists, Inc. High Point, NC | $1,386.66 | 40.00 |
|---|---|---|---|---|---|

Defendant Blue reported that he was employed by this company building cabinets. He recalled earning $9.00 per hour, before leaving this position to work for Carolina Frames. Employment records received from Interior Wood Specialties note the defendant's employment was terminated because he "falsely reported hours worked." The company notes that the defendant would not be considered for rehire.

62.    Other employment reported by the defendant includes a part-time position with Cole's Landscaping, High Point, NC, for a couple of months in 2009. The owner of the company, Darrell Cole, verified the defendant's part-time employment in 2009; however, he could not verify his pay rate. He stated that the defendant was an "okay worker, but was still getting trained." The defendant advised that he worked for B & H Millwork, High Point, NC, for over two years. Correspondence received from B & H Millwork and Fixtures, Inc., verified the defendant worked for their company in the clamping department between June 5, 2006, and August 4, 2008, and earned $8.50 per hour. Defendant Blue was terminated from this position due to poor job attendance, and he is not eligible for rehire.

### Financial Condition: Ability to Pay

63.    Financial information was obtained from a signed personal financial statement submitted by the defendant on September 16, 2015, and verified by reviewing his Equifax credit report, Accurint report, and North Carolina Department of Motor Vehicle records. The defendant reported no identifiable assets or liabilities. According to the defendant's credit report, he has two outstanding credit accounts. A furniture rental agreement through Acceptance Now with a balance of $3,816, and a car loan through North State Acceptance with a balance of $8,707. DMV records reflect the defendant owns a 2005 Nissan Armada. This information was corroborated by the defendant's wife, who advised that she has continued to make the defendant's car payment since his arrest in May 2015. (According to the defendant, this vehicle is also in his wife's name.)

64.    Although restitution is mandatory, the currency stolen during the robbery was recovered. The defendant does not appear to have the financial resources with which to pay an additional fine, as this would place an undue hardship on the defendant's dependents. If imprisoned, payments toward financial sanctions may be collected by the Federal Bureau

of Prisons through the Inmate Financial Responsibility Program. Any remaining balance can be paid in installments during the term of supervised release. The defendant is able-bodied and can obtain stable employment once he is released from the Bureau of Prisons.

## PART D. SENTENCING OPTIONS

### Custody

65.    **Statutory Provisions:** Count 1: The maximum term of imprisonment on Count 1 is 25 years. 18 U.S.C. §§ 2113(d) and 2. Count 2: The minimum term of imprisonment is seven years and the maximum term is life. 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. The term of imprisonment on Count 2 must be imposed consecutively to any other counts. 18 U.S.C. § 924(c)(1)(D)(ii).

66.    **Guideline Provisions:** Based upon a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range is 188 months to 235 months. As Count 2 requires a 84-month term of imprisonment, which shall be imposed consecutively to any other term of imprisonment, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), the effective guideline range is 272 months to 319 months. U.S.S.G §5G1.2(a). The defendant is a career offender who is also convicted of 18 U.S.C. § 924(c) or 929(a); however, the applicable guideline range remains 272 months to 319 months. USSG §§4B1.1(c)(2)(A) and 5G1.2(e).

### Impact of Plea Agreement

67.    The Plea Agreement had no impact on the guideline calculations.

### Supervised Release

68.    **Statutory Provisions:** Count 1: The Court may impose a term of supervised release of not more than five years. 18 U.S.C. § 3583(b)(1). Count 2: The Court may impose a term of supervised release of not more than five years. 18 U.S.C. § 3583(b)(1).

69.    Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

70.    **Guideline Provisions:** Count 1: Since the offense is a Class B Felony, the guideline range for a term of supervised release is 2 years to 5 years. USSG §5D1.2(a)(1). Count 2: Since the offense is a Class A Felony, the guideline range for a term of supervised release is 2 years to 5 years. USSG §5D1.2(a)(1).

### Probation

71.    **Statutory Provisions:** Count 1: The defendant is ineligible for probation because the offense is a Class B Felony. 18 U.S.C. § 3561(a)(1). Count 2: The defendant is ineligible for probation because it is expressly precluded by statute. 18 U.S.C. § 3561(a)(2).

72.   **Guideline Provisions:** Count 1: The defendant is ineligible for probation because the offense is a Class B Felony. USSG §5B1.1(b)(1). Count 2: The defendant is ineligible for probation because probation has been expressly precluded by statute. USSG §5B1.1(b)(2).

### Fines

73.   **Statutory Provisions:** Count 1: The maximum fine is $250,000. 18 U.S.C. § 3571(b). Count 2: The maximum fine is $250,000. 18 U.S.C. § 3571(b).

74.   Count 1: A special assessment of $100 is mandatory. 18 U.S.C. § 3013. Count 2: A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

75.   **Guideline Provisions:** The fine range for this offense is from $15,000 to $150,000. USSG §5E1.2(c)(3).  Pursuant to the special instruction in USSG §5E1.2(h)(1), for offenses committed prior to November 1, 2015, use the applicable fine guideline range that was set forth in the version of §5E1.2(c) that was in effect on November 1, 2014.

76.   Costs of prosecution shall be imposed on the defendant as required by statute. USSG §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 16, 2015, provides the following monthly cost data:

|  | Bureau of Prisons Facilities | Community Correction Centers | Supervision by Probation Officer | Supervision by Pretrial Services Officer | Pretrial Detention |
|---|---|---|---|---|---|
| Daily | $84.00 | $79.00 | $11.00 | $9.00 | $76.00 |
| Monthly | $2,552.00 | $2,417.00 | $326.00 | $73.00 | $2,319.00 |
| Annually | $30,621.00 | $28,999.00 | $3,909.00 | $3,279.00 | $27,832.00 |

### Restitution

77.   **Statutory Provisions:** Pursuant to 18 U.S.C. § 3663A, restitution in the amount of $5,002 shall be ordered in this case.  Payments should be made payable and submitted to the Clerk of Court, United States District Court/Middle District of North Carolina, 324 W. Market Street, Greensboro, NC 27401. Restitution, as set forth below, is due and owing to the following victim:

| Victim Name | Amount of Loss |
|---|---|
| Bank of America, N.A.<br>5013 Mackay Road<br>Jamestown, NC 27282 | $5,002.00 |

78.   **Guideline Provisions:** Restitution shall be ordered. USSG §5E1.1.

   **Denial of Federal Benefits**

79.   **Statutory Provisions:** None.

80.   **Guideline Provisions:** None.


## PART E. FACTORS THAT MAY WARRANT DEPARTURE

81.   The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.


## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

82.   The probation officer has not identified any factors which, under 18 U.S.C. § 3553(a), would warrant a sentence outside of the advisory guideline range.

Respectfully Submitted,
Melissa A. Alexander
Chief U.S. Probation Officer


By:   Karyn S. Franks
   U.S. Probation Officer

   May 10, 2016
   Date

# SENTENCING RECOMMENDATION

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## UNITED STATES V. BENJAMIN CORNELIUS BLUE
## DKT. 0418 1:15CR00223-1

**TOTAL OFFENSE LEVEL**       **31**
**CRIMINAL HISTORY CATEGORY**       **VI**

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | Ct. 1: 0 years-25 years<br>Ct. 2: 7 years, consecutive to all other counts | 272 months to 319 months | Ct 1: Middle (216 months)<br>Ct. 2: 84 months, to run consecutive to Ct. 1 |
| **SUPERVISED RELEASE:** | Ct. 1: 0 years-5 years<br>Ct. 2: 0 years-5 years | Ct. 1: 2 years-5 years<br>Ct. 2: 2 years-5 years | Ct. 1: 5 years<br>Ct. 2: 5 years, to run concurrent with Ct. 1 |
| **PROBATION:** | Ineligible | Ineligible | Ineligible |
| **FINE:** | Ct. 1: $250,000<br>Ct. 2: $250,000 | $15,000-$150,000 | Not Recommended |
| **RESTITUTION:** | $5,002 | $5,002 | $5,002* |
| **SPECIAL ASSESSMENT:** | Ct. 1: $100<br>Ct. 2: $100 | Ct. 1: $100<br>Ct. 2: $100 | Ct. 1: $100<br>Ct. 2: $100 |

*\* Currency in the amount of **$5,098** was recovered following the robbery. The funds remain in evidence, and upon release, can be credited to the restitution amount to fully pay the defendant's mandatory obligation.*

*\*Since more than one defendant contributed to the loss of the victims, the Court may order that each defendant be held jointly and severally responsible for payment of restitution, or the Court may apportion liability among defendants to reflect the level of contribution to the victim's losses and economic circumstances of each defendant, pursuant to 18 U.S.C. § 3664(h).*

## Justification:

Defendant Blue is 31 years old. Prior terms of probation and imprisonment have not deterred the defendant's involvement in criminal activity. Based on his violent criminal history, he is a

career offender.  A sentence near the middle of the guideline range, followed by a five-year term of supervised release, is recommended.

In view of the defendant's prior history of substance abuse, a condition for substance abuse testing and treatment is recommended.  Financial conditions are recommended to monitor the defendant's employment and financial circumstances.  A fine is not recommended based on the defendant's inability to pay. *(As previously indicated, the amount of funds seized from the defendant exceeds the amount of loss; therefore, the Court may address whether the remaining funds (approximately $96) should be credited/applied to the special assessment fee.)*

## Voluntary Surrender:

Based on the provisions of 18 U.S.C. § 3143(a)(2), the defendant is subject to mandatory detention.

## Recommended Conditions of Supervised Release

1.    The defendant shall comply with the standard conditions of supervised release.

2.    The defendant shall provide any requested financial information to the probation officer.

3.    The defendant shall submit to substance abuse testing, at any time, as directed by the probation officer. The defendant shall cooperatively participate in a substance abuse treatment program, which may include drug testing and inpatient/residential treatment, and pay for treatment services, as directed by the probation officer.  During the course of treatment, the defendant shall abstain from the use of alcoholic beverages.

4.    The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

5.    The defendant shall notify the probation officer of any material change in his economic circumstances that may affect his ability to pay restitution, a fine, or the special assessment.

6.      Restitution in the amount of $5,002 is due and payable immediately, and shall be paid jointly and severally with the codefendant in this case.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of the term of supervised release, the defendant shall make payments in equal, monthly installments of $100 to begin 60 days after the commencement of the term of supervised release and continuing during the entire term of supervised release or until paid in full.  **(It is recommended that the interest on the restitution be waived pursuant to 18 U.S.C. § 3612(f)(3).)**

Respectfully Submitted,
Melissa A. Alexander
Chief U.S. Probation Officer

By:   Karyn S. Franks
U.S. Probation Officer

 May 10, 2016
Date

**ADDENDUM TO THE PRESENCE REPORT**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**UNITED STATES V. BENJAMIN CORNELIUS BLUE**
**DKT. 0418 1:15CR00223-001**

## OBJECTIONS

### By the Government

The government has no objections.

### By the Defendant

On January 29, 2016, defense counsel filed pleadings on behalf of the defendant titled, "Sealed Position Paper Regarding Sentencing Factors." The following objection remains unresolved:

Objection No. 1: The defendant "objects to being found as a Career Offender under USSG §4B1.1, and thus objects to all paragraphs related to such in the presentence report."

In the defendant's pleadings, it is noted that the defendant "recognizes and concedes that under Fourth Circuit case law, his designation as a Career Offender might be appropriate, he nonetheless objects to its application, as applied in this case, based on the nature of one of his two underlying offenses." Specifically, the defendant objects to his conviction on October 30, 2003, of four counts of Felony Robbery with a Dangerous Weapon, being used as a predicate for his Career Offender status, because he was 17 years old at the time the offenses occurred.

### Response by U.S. Probation Officer

The probation officer maintains that the enhancement for Career Offender was accurately applied because the defendant was at least 18 years old at the time he committed the instant offense, the instant offense is a crime of violence, and the defendant has at least two prior felony convictions of a crime of violence. USSG §4B1.1(a). Therefore, the probation officer stands by the report as written.

Respectfully Submitted,
Melissa A. Alexander
Chief U.S. Probation Officer

By: Karyn S. Franks
U.S. Probation Officer

__May 10, 2016__
Date